## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.

WARMING TRENDS, LLC f/k/a FLAHERTY HOLDINGS, LLC,
a Delaware limited liability company,

      Plaintiff

v.

RAY STONE, an individual; and FIREFLY PATIO & HEARTH, LLC, a Colorado
limited liability company,

      Defendants

---

## VERIFIED COMPLAINT AND JURY DEMAND

---

Plaintiff Warming Trends, LLC f/k/a Flaherty Holdings, LLC ("Warming Trends"),

through counsel, J. Lucas McFarland and Cyd Hunt of Evans & McFarland, LLC, complains

against Defendants Ray Stone and Firefly Patio & Hearth, LLC as follows:

### PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff Warming Trends is a Delaware limited liability, duly authorized to do

business in Colorado, with its principal place of business at 4731 South Santa Fe Circle, Suite 2,

Englewood, Colorado 80110.  Warming Trends is a leading manufacturer of burners and other

fire feature accessories for outdoor and other fire pits.  Warming Trends was formerly named

Flaherty Holdings, LLC, but changed its name in April 2018 following acquisition of the

Warming Trends business from Rock Enterprises, Inc.  Warming Trends' members are Timothy

and Voni Flaherty, both of whom are residents of the State of Colorado.

2.     Defendant Ray Stone is an individual residing and doing business in the State of Colorado.

3.     Defendant Firefly Patio & Hearth, LLC is a Colorado limited liability company with a principal office address listed at 645 8th Street, Saguache, Colorado 81149.  Upon information and belief, Stone is the owner and principal of Firefly.

4.     This Court has jurisdiction over this action under 28 U.S.C. § 1331, as Plaintiff asserts claims arising under federal law, specifically, under the Defend Trade Secrets Act, 18 U.S.C. § 1836; the Lanham Act, 15 U.S.C. § 1125; and under 35 U.S.C. § 292 for false marking.

5.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, as all Defendants are residents of the State of Colorado and therefore reside within this District.

6.     An actual case or controversy has arisen between the parties.

7.     Plaintiff has been injured by Defendants' misconduct and has suffered significant damages resulting therefrom.

## FACTUAL BACKGROUND

8.     Ray Stone was a founder, shareholder, and employee of Rock Enterprises, Inc.  In such capacity, Stone developed a unique and market-leading brass burner for outdoor fire features and firepits.  Stone was Rock Enterprises' sole shareholder until August 24, 2015, when he transferred 40% ownership to Mike Windemuller.  Simultaneously, Stone assumed the role of president of Rock Enterprises.  Exhibit 1, Buy Sell Agreement; Exhibit 2, Employment Agreement.

9.     Stone's Employment Agreement included a confidentiality provision that precluded Stone from using or disclosing Rock Enterprises' confidential information, defined to

2

include any information not generally known and which was valuable or useful to Rock

Enterprises, *inter alia*, "the type of equipment or its configuration" used by the company.

Exhibit 2 at ¶ 11.

10.     In addition, on December 28, 2015, Stone executed a Confidentiality Agreement

& Non-Disclosure Agreement (the "Confidentiality Agreement").   Exhibit 3.

11.     Pursuant to the Confidentiality Agreement, "Confidential Information" was

defined as:

> information possessed by Rock Enterprises, Inc. and its business activities not
> generally known, which is used or is useful in the conduct of [its] business or
> tends to confer a competitive advantage over one who does not possess the
> information.  Confidential Information includes, but is not limited to. . .the type of
> equipment or its configuration used by Rock Enterprises, Inc. . . .

*Id.* at 1.

12.     In the Confidentiality Agreement, Stone promised not to "directly or indirectly,

use or disclose" Rock Enterprises' Confidential Information. *Id.*

13.     The Confidentiality Agreement also contained a non-compete and non-solicitation

agreement (the "Non-Compete"), which generally prohibited Stone from working for, engaging

in, or investing in, directly or indirectly, a business competitive with Rock Enterprises or

otherwise soliciting its employees, customers, vendors, or suppliers, for so long as he remained a

shareholder in Rock Enterprises and for three years thereafter. *Id.*

14.     The parties to the Confidentiality Agreement stipulated that Stone's breach of its

terms would entitle Rock Enterprises to injunctive relief. *Id.*

15.     On January 11, 2017, Stone conveyed all his remaining shares and interest in

Rock Enterprises to the company, vesting full ownership in Windemuller and his business

partner, Divo Catozzo.  Exhibit 4, January 11, 2017 Settlement Agreement.  The Settlement Agreement included a specific acknowledgement of the continued validity of the December 2015 Confidentiality Agreement, with the stipulation that the non-compete promise would expire January 11, 2019.  *Id.* at ¶ 4.  Moreover, Stone and Firefly were specifically precluded from fabricating or manufacturing firepits, burners, or related products and from installing or marketing a product replicating the Rock Enterprises burners.  *Id.*

16.     On April 2, 2018, Warming Trends acquired substantially all the assets of Rock Enterprises pursuant to an Asset Purchase Agreement and became Rock Enterprises' successor in interest in the business (the "Acquisition").  The Acquisition included Warming Trends' purchase of all trade secrets, confidential information, patent rights, and other intellectual property held by Rock Enterprises.

17.     Of note, this purchase included the trade secrets, confidential information, and patent rights associated with the company's leading product, the Crossfire® Brass Burner, initially developed by Stone, and for which all trade secrets, confidential information, and other rights were fully ceded to Rock Enterprises and then to Warming Trends.  As described on the Warming Trends website:

> The CROSS**FIRE** Brass Burner. . .is a distinctive fire pit burner that utilizes cutting-edge technology to produce a taller, brighter, fuller flame.  Leading the industry with a highly-engineered, precision product, Warming Trends is the original and only manufacturer of the CROSS**FIRE** Burner.  The patent-pending technology behind our CROSS**FIRE** Brass Burner uses a specific air-to-gas ratio at the point of combustion to produce a taller, brighter, fuller flame that resembles a natural, wood burning fire. We call this the Venturi Effect. Venturi Jet Technology generates high velocity gas flow and pulls more oxygen into the jet chamber – feeding the combination into the flame at the point of combustion. This causes the gas and oxygen mixture to shoot out of the jet at a high velocity as a super-charged flame, like water out of a fire hose.

https://www.warming-trends.com/crossfire-technology

18.     Through the Acquisition, Warming Trends acquired certain valuable confidential and trade secret information relating to the Crossfire® Brass Burner, including without limitation information regarding the design, materials, manufacturing processes, and assembly of the burner.  This confidential and trade secret information permits Warming Trends to sell a product that delivers optimal flame height, movement, and color, all with increased gas efficiency. Warming Trends has continued to undertake reasonable measures to maintain the secrecy of such information, and to develop and invest in the technology, which continues to bring Warming Trends substantial commercial success.

19.     Stone's agreement not to use or disclose any of Warming Trends' confidential information, including the proprietary information underlying the development of the Crossfire® Brass Burner, and that all such information belonged to Rock Enterprises, was critical to Warming Trends' decision to purchase the Rock Enterprises assets at substantial cost.

20.     On May 16, 2018, Stone assigned his interest in a patent application *nunc pro tunc* to October 30, 2015 for a "System and Method for Building Ornamental Flame Displays," which constituted integral portions of the Crossfire® Brass Burner, as well as all rights to any resulting issued patents, to Warming Trends.  Exhibit 5, Patent Assignment Agreement.  Stone had submitted the application as inventor of the system.  Warming Trends has diligently pursued issuance of this patent and has received a Notice of Allowance that the Patent Application will be allowed as a patent after November 4, 2019, but that patent has not yet issued.

21.     Also on May 16, 2018, Stone and Warming Trends (as Rock Enterprises' successor in interest) entered into an Amendment to certain of Stone's prior agreements with

Rock Enterprises.  The Amendment reaffirmed the terms of the Confidentiality Agreement and

the January 22, 2017 Settlement Agreement except as modified by the Amendment.  The

Amendment also extended Stone's Non-Compete to at least April 2, 2019, assuming no breach

occurred during its term.  Exhibit 6, Amendment to Confidentiality Agreement & Non-

Disclosure Agreement and Settlement Agreement, at ¶ 1.  Any breach by Stone occurring before

April 2, 2019 would further extend the Non-Compete term to April 1, 2020.  *Id.* at ¶ 3(c).  The

Amendment also included a stipulation that, in the event of breach, the offended party would be

entitled to injunctive relief.  *Id.* at ¶ 3(b).

22.     Prior to April 2, 2019, Warming Trends learned that Stone was attempting to

violate the Non-Compete and the Confidentiality Agreement.  Specifically, he had contacted

various Warming Trends competitors and disclosed or attempted to disclose confidential

information, and/or indicated that he would be able to reveal all the confidential information

underlying the Warming Trends burner, and/or develop a competitive burner, after expiration of

the Non-Compete.  In doing so, he had disclosed the existence of these confidential agreements

and attempted to violate them, all in contradiction of the Amendment and related agreements.

Pursuant to the terms of the Amendment (*id.* at ¶ 3(e)), Warming Trends notified Stone's counsel

of the breach and discussed a resolution of that immediate issue, but no resolution could be

obtained.  Accordingly, by the terms of the Amendment, the Non-Compete was extended to

April 1, 2020.

23.     On October 16, 2019, the Flahertys were attending a major industry trade show in

Louisville, Kentucky (the Hardscape North America, or HNA, Expo (the "Expo")).  *See*

https://gie-expo.com/events/hna.  On that date, one of Warming Trends' prospective customers

indicated that he had recently visited the Expo booth of a competitor. When asked to whom he was referring, he directed the Flahertys to Stone's booth for Firefly Patio and the "Firefly DC Brass Burner."

24.     The Flahertys confirmed that not only was Stone present at the Expo in violation of his extended Non-Compete, he was also exhibiting and marketing a brass burner remarkably similar to, if not indistinguishable from, Warming Trends' Crossfire® Brass Burner, the same burner that was designed, manufactured, and assembled using Warming Trends' trade secrets during Stone's employment at Rock Enterprises. The Crossfire® burner is also the same burner described in the confidential patent application to which Stone assigned all right, title, and interest (including all continuations, divisions, and other improvements) to Warming Trends. *See* Exhibit 5.

25.     As with the Crossfire® Brass Burner, Stone/Firefly's DC Brass Burner is also brass, uses threaded jets, uses a spoke configuration Stone designed for Rock Enterprises, uses linear burners in a similar configuration, and otherwise is virtually visually indistinguishable from the Crossfire® Brass Burner that Stone helped develop for Rock Enterprises.

26.     One attendee at the Expo stated to Warming Trends, "That guy down there [Stone] is selling the same burner."

27.     Stone and Firefly's promotion materials at the Expo indicated that their product was "patented." But, upon a diligent search of the U.S. Patent Office's website, Warning Trends was unable to find any patents issued to Stone or any published patent applications. The Flahertys obtained the attached photos demonstrating Stone's presence at the Expo, the appearance of the Firefly DC Brass Burner, and the representations as to patents. *See* Exhibit 7.

28.     Upon further investigation, the Flahertys discovered that Stone was advertising the burners he had duplicated from Warming Trends' proprietary design on the Firefly Patio website and referring to them on the site as "patented" ("Firefly's patented SEALTITE Jets are the brainchild of Ray Stone"), despite that the only patents Stone appears to have applied for are those already assigned exclusively to Warming Trends. *See* https://fireflypatio.com/About-Us.

29.     When asked why he thought he was authorized to market and sell his knock-off burners, Stone stated it was because he had "improved" upon the jets and had obtained a patent upon them.  Stone also separately indicated that the patent had not issued and was pending.  As stated above, Warming Trends was unable to locate any issued patents or pending patent applications, despite a diligent search.

30.     Stone could not have developed an entirely new burner system without use of or reference to Warming Trends' confidential information and trade secrets, which he agreed not to use or disclose.  Other competitors have attempted to duplicate and even reverse engineer Warming Trends' product without success.  Stone and Firefly have clearly used the Warming Trends confidential information and trade secrets in developing the DC Brass Burner, and have likely duplicated the Crossfire® Brass Burner or attempted to make minor improvements upon it, either of which employs the Warming Trends trade secrets and other confidential information.

31.     Indeed, Stone and Firefly's own marketing materials acknowledge this, and make clear that Stone drew upon his experience in developing Warming Trends Crossfire® Brass Burner to develop the DC Brass Burner.  The Firefly website states, "With his extensive knowledge of the industry [Stone] was able to create the Firefly DC Brass Burner system and this allowed Ray to achieve and file a utility patent pending on the SEALTITE jet system." *See*

https://fireflypatio.com/About-Us (emphasis added).

  32. Firefly's listing on Alignable, a small business network, states:

> Well over 30 years experience in the Plumbing gas and fire feature industry. Unbeatable technology and performance of the new Firefly brass burners <u>With years of testing and developing</u>, this new fire feature burners are designed to outperform any decorative flame burner on the market. Made of brass this exceptional burner as a lower profile and a much better flame affect, and is designed to last for a lifetime.
>
> <u>With years of experience in the industry, my goal was to design a Better burner</u> for the outdoor fire feature industry at an affordable price. <u>With my experience design and precise engineering, development and testing we have done that</u>. As a result we were able to file for a utility patent On the Firefly brass burner Sealtite technology. See for your self a new brass Fire feature burner and the performance it produces at a very affordable price. With the need for an affordable fire feature brass burner in the market you won't be disappointed with the performance or the price.

https://www.alignable.com/denver-co/firefly-patio (all typographic and grammatical errors in original) (emphasis added).

  33. The Expo occurred October 16-18, 2019.  It is among the largest trade shows in the fire features industry and was attended by many of Warming Trends' customers and distributors, whose business Stone is directly competing for in blatant violation of his non-disclosure and non-compete agreements with Warming Trends.

  34. The intentional confusion in the marketplace caused by Stone's conduct will irreparably harm Warming Trends' business in loss of customers and distributors, which will be difficult to quantify or remedy with money damages after such losses occur.  Several distributors approached Warming Trends after seeing the Stone/Firefly burner at the Expo.  One distributor commented that Stone had approached him attempting to sell his burner for distribution as a competitive replacement to Warming Trends' burner.  Consumers will also be misled into

believing that Firefly Patio and Stone are reputable and legal sources for Warming Trends' Brass

Burners (at a lower price point) when they are not.

35.     Undersigned counsel provided notice of this claimed breach to counsel for Stone,

Brendan Reilly, Esq., on October 18, 2019, and counsel for the parties conferred that same day.

On October 22, 2019, Mr. Reilly communicated that Stone denies similarities between his

product and that of Warming Trends.  It is, unfortunately, apparent Warming Trends cannot

protect its valuable trade secrets without court intervention.

### FIRST CAUSE OF ACTION
#### (Defend Trade Secrets Act – All Defendants)

36.     Plaintiff incorporates by reference all preceding allegations.

37.     Plaintiff owns and possesses certain confidential information and trade secrets,

including, without limitation, the specifics of the design, manufacturing process, and assembly of

its products, which trade secrets are valuable and proprietary.

38.     These trade secrets are used and intended to be used and sold in interstate

commerce.

39.     Plaintiff has taken reasonable measures to keep its trade secrets secret and

confidential, including, without limitation, efforts undertaken by Rock Enterprises prior to

closing on Plaintiff's purchase of the Warming Trends business and the procurement of the

material contracts referenced herein, which include the confidentiality and nondisclosure

agreement executed by Stone.

40.     The trade secrets derive independent economic value from not being generally

known, and not being readily ascertainable through proper means by another person who could

obtain economic value from the disclosure or use of the information.

41.     Defendants have disclosed and misappropriated these trade secrets for their own benefit in violation of the Defend Trade Secrets Act.

42.     Defendants' disclosure and misappropriation were intentional, knowing, and willful.

43.     Defendants' disclosure and misappropriation have caused Plaintiff to incur damages and threaten to cause Plaintiff imminent and irreparable harm if Defendants are not enjoined from continuing their wrongful conduct.

## SECOND CAUSE OF ACTION
**(Colorado Uniform Trade Secrets Act, C.R.S. § 7-74-101, *et. seq.* – All Defendants)**

44.     Plaintiff incorporates by reference all preceding allegations.

45.     Plaintiff owns and possesses certain confidential information and trade secrets, including the specifics of the design, manufacturing process, and assembly of its products, which trade secrets are valuable and proprietary, and which constitute trade secrets within the meaning of the Colorado Uniform Trade Secrets Act, C.R.S. § 7-74-101, *et seq.*

46.     Defendants have disclosed and misappropriated these trade secrets for their own direct benefit in violation of the Uniform Trade Secrets Act.

47.     Defendants' disclosures were without the express or implied consent of Plaintiff.

48.     The information obtained by Defendants were acquired by them under circumstances that give rise to a duty to maintain secrecy or limit its use.

49.     Defendants' misappropriation has caused Plaintiff damages.

50.     Defendants have obtained gains, profits, and advantages as a result of the wrongful acts as alleged herein, to the detriment of Plaintiff.

51.     Defendants' disclosure and misappropriation have caused Plaintiff to incur damages and threaten to cause Plaintiff imminent and irreparable harm if Defendants are not enjoined from continuing their wrongful conduct.

## THIRD CAUSE OF ACTION
### (Breach of Contract - Stone)

52.     Plaintiff incorporates by reference all preceding allegations.

53.     Plaintiff, on its own behalf and as successor in interest to Rock Enterprises, Inc., entered into contracts with Stone that obligated Stone to refrain from divulging confidential information and/or trade secrets, obligated Stone to refrain from competing with Plaintiff, prohibited Stone from fabricating or manufacturing burners and firepit equipment, and assigned all rights in certain patentable technology to Plaintiff.

54.     Plaintiff has fully performed all its contractual duties to Stone.

55.     As set forth above, Stone has breached his contracts with Plaintiff.

56.     Stone's breach has caused Plaintiff to incur damages and threatens to cause Plaintiff imminent and irreparable harm if Stone is not enjoined from continuing his wrongful conduct.

## FOURTH CAUSE OF ACTION
### (Colorado Deceptive Trade Practices Act, C.R.S. § 6-1-101, *et seq.* – All Defendants)

57.     Plaintiff incorporates by reference all preceding allegations.

58.     Defendants engaged in deceptive trade practices prohibited by the Colorado Consumer Protection Act, C.R.S. § 6-1-101, *et seq.*; specifically §§ 6-1-105(1)(b), (c), (e), and (u), with respect to claims as to patents pending or issued on their Firefly DC Brass Burner and in various advertising statements as set forth above.

59.     The deceptive trade practices occurred in the course of Defendants' business.

60.     The deceptive trade practices significantly impacted the public as actual or potential consumers of the Defendants' services and products.

61.     Defendants engaged in such deceptive trade practices fraudulently, knowingly, willfully, and intentionally, and have willfully and intentionally refused to remedy such deceptive trade practices.

62.     As a result of Defendants' deceptive trade practices, Plaintiff has suffered damages in an amount to be proven at trial and is entitled to appropriate fees and penalties as set forth in the operative statute.

## FIFTH CAUSE OF ACTION
### (Unfair Competition – All Defendants)

63.     Plaintiff incorporates by reference all preceding allegations.

64.     Defendants engaged in unlawful intentional business practices by misappropriating Plaintiff's trade secrets, improperly utilizing its confidential and proprietary information, and usurping for their own company corporate opportunities belonging to Plaintiff.

65.     Defendants' unlawful conduct has led to a diminution in value of Plaintiff's trade secrets, and Plaintiff has sustained, and will continue to sustain, substantial injury, loss, and damages in an amount to be proven at trial.

## SIXTH CAUSE OF ACTION
### (Lanham Act – All Defendants)

66.     Plaintiff incorporates by reference all preceding allegations.

67.     As set forth above, Defendants have made false statements of fact in commercial advertisements about their products.

68.     The statements have actually deceived, or have a tendency to deceive, a substantial segment of those reading or hearing the statements.

69.     Defendants' deception is material in that it is likely to influence purchasing decisions.

70.     Defendants caused their false statements to enter interstate commerce.

71.     Defendants' deception has caused Plaintiff to incur damages and threatens to cause Plaintiff imminent and irreparable harm if Defendants are not enjoined from continuing their wrongful conduct.

### SEVENTH CAUSE OF ACTION
### (False Marking – All Defendants)

72.     Plaintiff incorporates by reference all preceding allegations.

73.     In their advertising, Defendants have falsely claimed the products they offer for sale are based on patented technology.

74.     Defendants made this false claim with the intent of deceiving the public.

75.     Plaintiff has been inured as the result of Defendants' false marking of their products.

WHEREFORE, Plaintiff requests that the Court impose a preliminary injunction and a permanent injunction enjoining Defendants from competing with Plaintiff, from fabricating or manufacturing firepit equipment or supplies, and from directly or indirectly divulging Plaintiff's trade secrets or utilizing such secrets to their own benefit; enter judgment in Plaintiff's favor and against Defendants on all causes of action; award Plaintiff its damages and/or the disgorgement of Defendants' wrongfully procured profits, attorney fees, and costs of suit; award penalties and

fees as permitted by law or statute, and impose pre- and post-judgment interest on all amounts awarded.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL CLAIMS SO TRIABLE.**

DATED October 23, 2019.

Respectfully submitted,

**EVANS & MCFARLAND, LLC**

*The original signature is on file at Evans & McFarland, LLC*

By: /s/ J. Lucas McFarland
    J. Lucas McFarland
    Cyd Hunt
    Evans & McFarland, LLC
    910 13th St., #200
    Golden, CO 80401
    Telephone:  303.279.8300
    Email:  lmcfarland@emlawyers.com
           chunt@emlawyers.com

ATTORNEYS FOR PLAINTIFF

## VERIFICATION

Under penalty of perjury, I declare that I have read the foregoing, and the facts alleged therein are true and correct.

WARMING TRENDS, LLC

By: ___Timothy Flaherty___

Its: ___President and CEO___