IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 19-cv-03027-PAB-STV

WARMING TRENDS, LLC f/k/a Flaherty Holdings, LLC, a Delaware limited liability company,

    Plaintiff and Counterclaim Defendant,

v.

RAY STONE, an individual,
FIREFLY PATIO & HEARTH, LLC, a Colorado limited liability company,
BSG, LLC. HOLDINGS d/b/a BSG HOLDINGS, LLC, and FIREFLY PATIO & HEARTH, a Colorado Limited Liability Company, and
AMD DIRECT, INC. d/b/a SUMMERSET PROFESSIONAL GRILLS and FIREGEAR OUTDOORS, a California limited liability company,

    Defendants and Counterclaim Plaintiffs.

---

**ORDER**

---

    The matter before the Court is the parties' Joint Motion for Determination [Docket No. 242], wherein the parties ask the Court to construe four terms[1] in two patents.[2] On

---

[1] The Joint Disputed Claim Terms Chart identifies five disputed terms. *See* Docket No. 233. However, at the May 11, 2022 claim construction hearing, the parties informed the Court that the term "middle T-shaped connector" was no longer at issue, and the Court accordingly does not address this term.

[2] The patents at issue are U.S. Patent Nos. 10,571,117 ("the '117 Patent"), issued February 25, 2020, and 11,913,670 ("the '670 Patent"), issued December 7, 2021 (collectively, the "patents"). Docket Nos. 235-1, 235-9. The '670 Patent is a continuation of the '117 Patent, shares the same specification and figures, and the claims are similar, except for the nipple claimed in the '670 Patent. Docket No. 238 at 7. Because of the similarities between the patents, the Court will cite only the '117 Patent unless a citation to the '670 Patent is necessary.

May 11, 2022, the Court held a claim construction hearing pursuant to *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996).  Docket No. 254.

## I. BACKGROUND

Plaintiff initiated this action on October 23, 2019.  Docket No 1.  On January 18, 2022, plaintiff filed its third amended complaint, claiming, *inter alia*, that defendants infringed upon the '117 and '670 patents.  Docket No. 217 at 15-17, ¶¶ 66-78.

The patents relate to a system and method for creating ornamental fire displays, such as a system of pipes and jets used in outdoor gas fire pits.  Docket No. 235-1 at 16.  A preferred embodiment is shown in Figure 1:



Fig. 1

'117 Patent at 3. The preferred embodiment in Figure 1 has jets [labeled as 28 in Figure 1] mounted on jet support sections to allow the user to create a gas and air mixture that produces a swirling pattern that is well suited for ornamental flames. '117 Patent, col. 7, ll. 41-57. The parties ask the Court to construe four different claim terms

3

found in the two patents.  The Court will construe these claim terms consistently across each patent and each claim.  *See Boss Indus., Inc. v. Yamaha Motor Corp., U.S.A., Inc.*, 333 F. App'x 531, 536-37 (Fed. Cir. 2009) (unpublished) (finding that the district court did not err in construing a term consistently for multiple patents where the patents' specifications were "nearly identical" and where the patents "share[d] many common terms with [their] sister patents").

Claim 1 of the '117 Patent describes:

1. A modular burner system comprising:
a plurality of burners, at least two of the burners including a nipple that is
    brass and a jet that is brass;
in each of the at least two of the burners:
the nipple has a first end that is threaded and a second end
    that is closed;
the nipple has a side wall between the first end and
    the second end, the side wall defining a bore, the bore
    extends through the first end to the second end;
the first end, second end, and side wall of the nipple are
    of integral, one piece, construction free of joints;
the nipple has a threaded hole extending through the side
    wall of the nipple to the bore; and
the jet has a threaded end threadedly engaged with the
    threaded hole.

'117 Patent, col. 10, ll. 33-47.

## II.  LEGAL STANDARDS FOR PATENT CLAIM CONSTRUCTION

Claim construction is a question of law for the court, *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 325 (2015), guided by Federal Circuit precedent.  *See SunTiger, Inc. v. Scientific Research Funding Group*, 189 F.3d 1327, 1333 (Fed. Cir. 1999).  The Federal Circuit has made clear that "there is no magic formula or catechism for conducting claim construction."  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1324 (Fed.

Cir. 2005) (en banc). Nevertheless, there are several key sources and doctrines that should be consulted and applied, but "[t]he sequence of steps used by the judge in consulting various sources is not important; what matters is for the court to attach the appropriate weight to be assigned to those sources in light of the statutes and policies that inform patent law." *Id.*

The starting point is the "bedrock principle" that "'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Id.* at 1312 (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). The words of the claims "'are generally given their ordinary and customary meaning,'" *id.* (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)), which is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Id.* at 1313; *see CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002) ("Generally speaking, [courts] indulge a 'heavy presumption' that a claim term carries its ordinary and customary meaning."). In those instances when the claim language "involves little more than the application of the widely accepted meaning of commonly understood words," construction is relatively straightforward and "the ordinary meaning . . . may be readily apparent even to lay judges." *Phillips*, 415 F.3d at 1314. When the claim terms have a particular meaning in the field, however, courts "look[ ] to 'those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean.'" *Id.* (quoting *Innova*, 381 F.3d at 1116). "These sources include the words of the claims themselves, the remainder of the specification,

the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." *Innova*, 381 F.3d at 1116.

The context in which a term is used, both in the asserted claim as well as in other claims of the patent, can be valuable and instructive. *Phillips*, 415 F.3d at 1314. In addition, the patent specification – the text and figures of the patent that precede the claims – "is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Id.* at 1315 (quoting *Vitronics*, 90 F.3d at 1582). With that said, "the claim requirement presupposes that a patent applicant defines his invention in the claims, not in the specification." *Johnson & Johnston Associates Inc. v. R.E. Service Co., Inc.*, 285 F.3d 1046, 1052 (Fed. Cir. 2002); *see PSC Computer Products, Inc. v. Foxconn Int'l, Inc.*, 355 F.3d 1353, 1359 (Fed. Cir. 2004) ("[T]he claims of a patent limit the invention, and specifications cannot be utilized to expand the patent monopoly") (quoting *United States v. Adams*, 383 U.S. 39, 48-49 (1966)).

If necessary, courts may also consider the patent's prosecution history – the official record of the patent application and subsequent process before the U.S. Patent and Trademark Office, which "provides evidence of how the PTO and the inventor understood the patent." *Phillips*, 415 F.3d at 1317. Nevertheless, "because the prosecution history represents an ongoing negotiation between the PTO and the applicant, . . . it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Id.* And, although courts may consult extrinsic evidence such as "expert and inventor testimony, dictionaries, and learned treatises," such

evidence is "less significant than the intrinsic record," i.e., the specification and prosecution history, and courts must be wary not to use extrinsic evidence to override the meaning of the claim terms demonstrated by the intrinsic evidence. *Id.* at 1317-19 (quoting *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 862 (Fed. Cir. 2004)). That is, "extrinsic evidence may be useful to the court, but it is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence." *Id.* at 1319.

In short, a court must construe the claim terms as they would be viewed by "the ordinary artisan after reading the entire patent." *Id.* at 1321. This is important in order to respect the public notice function of patents:

> The patent system is based on the proposition that claims cover only the invented subject matter. As the Supreme Court has stated, "[i]t seems to us that nothing can be more just and fair, both to the patentee and the public, than that the former should understand, and correctly describe, just what he has invented, and for what he claims a patent."

*Id.* at 1321 (quoting *Merrill v. Yeomans*, 94 U.S. 568, 573-74 (1876)).[3]

---

[3] Patent claims are to be construed through the eyes of a person of ordinary skill in the art ("POSITA") at the time of the invention. *Innova*, 381 F.3d at 1116. Defendants argue that a POSITA would have substantial knowledge and expertise in plumbing or metalworking, like a tradesperson or mechanical engineer. Docket No. 235 at 7; Docket No. 236 at 4. Plaintiff's expert states that a POSITA would be someone with a bachelor's degree in mechanical engineering or its equivalent or someone with three to five years of experience fabricating, designing, analyzing, and/or repairing mechanical/fluid systems. Docket No. 238-1 at 7, ¶ 30. These positions have substantial overlap. The Court finds that a POSITA is a person with a bachelor's degree in mechanical engineering or someone with at least three years of experience fabricating, designing, analyzing, and/or repairing mechanical/fluid systems.

### III. ANALYSIS[4]

#### A. Integral, One Piece, Construction Free of Joints[5]

Plaintiff argues that no construction is necessary for "integral, one piece, construction free of joints." Docket No. 233 at 2. Defendants argue that this term should be construed as "[t]he nipple, including the first end that is threaded, the second end that is closed, and the sidewall, is a single piece without any joints or endcaps, regardless of how attached." *Id.* Defendants cite the patent prosecution history and argue that their construction is consistent with the specification. Docket No. 235 at 10.

At the hearing, defendants emphasized the importance of construing the term to clarify that an end cap that is welded on would not be "free of joints" because plaintiff is alleging that burners with end caps infringe on the patent. May 11, 2022, Unofficial Transcript ("Transcript") at 10-11, 13. Plaintiff responded that defendants' proposed construction adds limitations to the term that are not present in the claim. *Id.* at 20. As noted at the hearing, the Court will not look ahead to the infringement allegations in construing the claim. *Id.* at 10. The issue is whether the term needs construction. The Court finds that it does not. The claim terms match the arguments and amendments made during patent prosecution. Defendants have not provided convincing evidence

---

[4] The Firefly defendants and AMD Direct propose identical constructions of each term. *See* Docket No. 233 at 2-5. AMD Direct additionally argues that, in the alternative, the Court should find each term indefinite. Docket No. 236 at 5-8. The Court will refer to "defendants' construction" to collectively mean both Firefly defendants' and AMD Direct's construction and will consider AMD Direct's indefiniteness argument separately.

[5] The Court addresses the terms in the order the parties addressed them at the Markman hearing.

from the intrinsic record that the claim term "integral, one piece, construction free of joints" requires a construction other than its plain and ordinary meaning. As noted above, when claim language "involves little more than the application of the widely accepted meaning of commonly understood words," construction is relatively straightforward. *Phillips*, 415 F.3d at 1314. "Generally speaking, [courts] indulge a 'heavy presumption' that a claim term carries its ordinary and customary meaning." *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002). The "nuances of the prosecution history," Docket No. 235 at 10, do not overcome this presumption. Accordingly, the Court declines to construe this term and finds that it shall have its plain and ordinary meaning.

### B. Burner

The term "burner" is not defined in either patent. Plaintiff argues that no construction is necessary for the term. Docket No. 233 at 2. Defendants argue that this term should be construed as "[a] nipple and at least one jet." *Id.*

Defendants argue that the term burner can have more than one meaning. Defendants claim that the construction they propose is consistent with the definition of "burner" in the '670 Patent and adds clarity to the '117 Patent. Docket No. 235 at 8-9. Plaintiff responds that defendants' construction conflicts with the specifications and the claims. Docket No. 238 at 8.

The Court finds that no construction is necessary. The '117 Patent claims "a plurality of burners, *at least two of the burners* including a nipple that is brass and a jet that is brass." '117 Patent, col. 10, ll. 34-35 (emphasis added). This claim language

does not limit a burner to a "nipple and at least one jet," as defendants propose. *See* Docket No. 233 at 2. While defendants are correct that this language from the first claim focuses in part on the use of brass, Docket No. 239 at 3, the language nevertheless does not limit a burner to having a nipple and at least one jet.

Plaintiff's expert, Dr. Harri Kytomaa, states that a POSITA would understand the scope of the term "burner" based on the claims and context and states that the term is commonly understood. Docket No. 238-1 at 8, ¶ 39. Dr. Kytomaa additionally opines that a POSITA reviewing claim one would understand that "burners could be provided without a jet or could be provided in a non-nipple form." *Id.* at 9, ¶ 40. The Court agrees. As with the term "integral, one-piece, construction free of joints," a jury would be able to understand the meaning of the term "burner" as used throughout the patents.[6] Accordingly, the Court finds that no construction is necessary.

### C. Chamfered Exit

Defendants propose the construction of "chamfered exit" as "an angled exit on the inside of the jet, where the bore is widest at the exit." Docket No. 233 at 4. Plaintiff proposes a construction of "a sloped exit." *Id.* The term chamfered exit is not defined in the patent. *See generally* '117 Patent. The parties agree that a chamfered exit is a

---

[6] Generally, juries are instructed to apply the ordinary meaning to any claim term that the court has not provided a construction for in the jury instructions. *See* FED. CIR. BAR ASS'N, MODEL PATENT JURY INSTRUCTIONS 12 (2020) ("For any words in the claim for which I have not provided you with a definition, you should apply the ordinary meaning of those terms in the field of the patent."); N.D. CAL., MODEL PATENT JURY INSTRUCTIONS 4 (2019) ("For a claim term for which I have not provided a definition, you should apply the ordinary meaning.").

10

sloped or angled exit; the dispute is whether defendants' additional limitations should be part of the construction.

The Court finds that there is no basis to impute the additional limitations in defendants' construction. Defendants' limitations come from a preferred embodiment, Docket No. 235 at 13, but "it is improper to read limitations from a preferred embodiment described in the specification . . . into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004). Defendants have not provided a clear indication in the intrinsic record that the patentee intended the term chamfered exit to only pertain the sloped exits on the inside of the jet with the bore widest at the exit. Accordingly, the Court will construe the term chamfered exit to mean "a sloped exit."

### D. Converging Paths

Plaintiff proposes that "converging paths" means "paths that create a swirling pattern"; defendants propose that the term means "paths that meet at a point or otherwise intersect." Docket No. 233 at 3.

The term is included in dependent claims 4, 8, and 9 of the '117 Patent. '117 Patent, col. 10, ll. 58-59; *id.* col. 11, ll. 3-10. In each claim, there is a description of jets "aimed in converging paths." *See id.* The specification states that "[i]t is preferred that the second pairs of opposing nipples of his [sic] example would have jets that are pointed up, so that the jets deliver converging gas streams. This arrangement will allow the converging gas streams to create a swirling pattern of gas and air." '117 Patent,

11

col. 5, ll. 8-12. The specification indicates that the "angle of the jet relative to the nipple . . . may be varied in order to achieve different flame effects, such as swirling of the flames, or to create an arrangement where the flames fill a large volume without releasing large amounts of heat." *Id*., col. 4, ll. 36-40. However, contrary to plaintiff's argument, the claims do not describe the angles in terms of creating a swirling pattern, but rather describe the necessary angles of the jets as being aimed in "converging paths." The Court adopts the common meaning of "converging paths" proposed by defendants, namely, "paths that are aimed to meet or intersect."

### E. Indefiniteness

A term is indefinite if it "fail[s] to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014). To prove that a term is indefinite, a party must "demonstrate by clear and convincing evidence that one of ordinary skill in the relevant art could not discern the boundaries of the claim based on the claim language, the specification, the prosecution history, and the knowledge in the relevant art." *Haemonetics Corp. v. Baxter Healthcare Corp.*, 607 F.3d 776, 783 (Fed. Cir. 2010).

Defendant AMD Direct argues, in the alternative to each of its proposed constructions, that each term is indefinite and therefore invalid. Docket No. 236 at 5-8. At the claim construction hearing, AMD Direct clarified that its argument was not a traditional indefiniteness argument. Transcript at 14-16. Instead, AMD Direct's argument was that, when plaintiff argues no construction is needed and then sets forth an infringement contention that defies the plain meaning of the term, it places AMD Direct in an untenable position. *Id.* at 15. When the Court indicated that this was not a

true indefiniteness issue and that other remedies could be available in that situation, AMD Direct stated that it did not disagree with this conclusion and that summary judgment could be an appropriate remedy available to it.  *Id.*  AMD Direct has not met the standard for indefiniteness, and the Court rejects this argument.

## IV. CONCLUSION

Accordingly, it is

**ORDERED** that the parties' Joint Motion for Determination [Docket No. 242] is **GRANTED**.  It is further

**ORDERED** that the disputed claim terms will be construed as indicated above.

DATED November 23, 2022.

                                            BY THE COURT:

                                            PHILIP A. BRIMMER
                                            Chief United States District Judge