IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Case No. 19-cv-03027-PAB-STV

WARMING TRENDS, LLC f/k/a FLAHERTY HOLDINGS, LLC, a Delaware limited
liability company,

      Plaintiff,

v.

RAY STONE, an individual,
FIREFLY PATIO & HEARTH, LLC, a Colorado limited liability company,
BSG, LLC HOLDINGS d/b/a BSG HOLDINGS, LLC and FIREFLY PATIO & HEARTH, a
Colorado limited liability company, and
AMD DIRECT, INC. d/b/a SUMMERSET PROFESSIONAL GRILLS and FIREGEAR
OUTDOORS, a California limited liability company,

      Defendants.

_____

**ORDER**

_____

      This matter is before the Court on Defendant AMD Direct, Inc.'s Motion for

Summary Judgment [Docket No. 280].  The Court has jurisdiction pursuant to 28 U.S.C.

§ 1331.

## I.    BACKGROUND[1]

      Defendant AMD Direct, Inc. ("AMD") is in the business of purchasing and

reselling burners to distributors and routinely decides to buy and sell burners based on

the market generally.  Docket No. 280 at 2, ¶ 1.  AMD purchased burners for resale

from Ray Stone, Firefly Patio and Hearth, and BSG, LLC Holdings (collectively, "the

Firefly defendants").  *Id.*, ¶ 2.  None of the burners that the Firefly defendants provided

---

[1] The following facts are undisputed unless otherwise indicated.

to AMD contained a nipple with a "first end that is threaded."  *Id*. at 3, ¶ 8.[2]  In 2020,

AMD received an initial shipment of brass burners from the Firefly defendants that had a

closed or "blind" end at the second end of the nipple.  *Id*. at 4, ¶ 12.  Warming Trends

has presented no evidence that AMD promoted or advertised brass burners as being

"licensed" by Warming Trends.  *Id*. at 5, ¶ 16.

## II.   LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when

the "movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson*

*v. Liberty Lobby, Inc*., 477 U.S. 242, 248-50 (1986).  A disputed fact is "material" if,

under the relevant substantive law, it is essential to proper disposition of the claim.

*Wright v. Abbott Labs., Inc*., 259 F.3d 1226, 1231-32 (10th Cir. 2001).  Only disputes

over material facts can create a genuine issue for trial and preclude summary judgment.

*Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  An issue is

"genuine" if the evidence is such that it might lead a reasonable jury to return a verdict

for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial,

it may satisfy its burden at the summary judgment stage by identifying a lack of

evidence for the nonmovant on an essential element of the nonmovant's claim."

*Bausman v. Interstate Brands Corp*., 252 F.3d 1111, 1115 (10th Cir. 2001) (quotations

---

[2] Warming Trends denies this fact and argues that there is "ample evidence establishing that the subject burners practice the 'first end that is threaded' limitation under the doctrine of equivalents."  Docket No. 295 at 5-6, ¶ 8.  However, Warming Trends does not dispute that none of the burners contained a nipple with a first end that is "threaded."  *See id*.  Accordingly, the Court deems this fact undisputed.

omitted).  "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter."  *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994).  The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted).  "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case."  *Bausman*, 252 F.3d at 1115.  When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party.  *Id.*

### III.   ANALYSIS

AMD moves for summary judgment on all claims asserted against it including A) patent infringement; B) misappropriation of trade secrets under federal and state law; C) intentional inducement of breach of contract; D) false advertising under the Lanham Act; E) false advertising under the Colorado Consumer Protection Act; and F) unfair competition.  *See* Docket No. 280 at 6-20.  Warming Trends filed a response, Docket No. 295, and AMD replied.  Docket No. 319.

### A.  Patent Infringement

AMD argues that, "[b]ecause AMD is merely a reseller of burners that it purchases from BSG and does not otherwise make or use any Accused Burners, the patent infringement issues for AMD largely are the same as they are for the Firefly Defendants."  Docket No. 280 at 6.  AMD asserts that it is entitled to summary judgment on the patent infringement claims and "incorporate[s] by reference the non-infringement

points and authorities" from the Firefly defendants' motion for summary judgment.  *Id*. at

6-7 (citing Docket No. 274 at 12-16).

As an initial matter, Warming Trends argues that summary judgment is

inappropriate on the patent infringement claims because AMD improperly incorporates

facts and arguments from the Firefly defendants' motion.  Docket No. 295 at 10.

Warming Trends argues that AMD's actions "effectively increased the length of its

briefing" and violate the Court's Practice Standards.  *Id*.  As a result, Warming Trends

contends that the Court should strike AMD's arguments on patent infringement.  *Id*. at

10-11.

The Court's Practice Standards require the movant, in a section of the brief

entitled "Statement of Undisputed Material Facts," to

> set forth in simple, declarative sentences, separately numbered and
> paragraphed, each material fact which the movant believes is not in dispute and
> which supports movant's claim that movant is entitled to judgment as a matter of
> law. . . [e]ach separately numbered and paragraphed fact must be accompanied
> by a specific reference to material in the record which establishes that fact.

Practice Standards (Civil Cases), Chief Judge Philip A. Brimmer, § III.F.3.b.i.-ii.

(emphasis omitted).  Citing the Firefly defendants' motion, AMD argues that prosecution

history estoppel and claim vitiation bar Warming Trends from asserting a doctrine of

equivalents theory for the patent infringement claims.  Docket No. 280 at 7.  AMD failed

to set forth any facts regarding these arguments in its statement of undisputed facts.

*See generally id*.  AMD has therefore failed to comply with the Practice Standards for

putting such evidence before the Court.  As the Practice Standards emphasize, the

"sole purpose of these procedures is to establish facts and determine which of them are

in dispute."  Practice Standards (Civil Cases), Chief Judge Philip A. Brimmer,

§ III.F.3.b.vii.  Additionally, as Warming Trends notes, AMD likely avoided the Court's page limitation for summary judgment motions by not including more facts on the patent issues in its statement of undisputed facts section.  *See id*., § III.F.3.a. ("Motions [for summary judgment] . . . shall not exceed twenty pages.") (emphasis omitted); Docket No. 295 at 10.  However, despite the page limitation unfairness, the Court will allow AMD to incorporate the patent arguments from the Firefly defendants' motion for summary judgment because Warming Trends had the opportunity to fully address those arguments in its response to the Firefly defendants' motion.  *See generally* Docket No. 301.  Furthermore, Warming Trends has not shown it would suffer any prejudice if the Court considers the patent arguments from the Firefly defendants' motion.  Accordingly, the Court denies Warming Trends' request to strike AMD's motion.

Warming Trends alleges that two distinct groups of brass burners infringe the '117 patent and the '670 patent.[3]  Docket No. 295 at 11.  The "Group 1 Products" include brass burners with "blank end nipple[s]."  *Id*.  The "Group 2 Products" include brass burners with "press fit" end caps.  *Id*.; Docket No. 295-16 at 30-31, ¶¶ 96-99.  AMD moves for summary judgment on Warming Trends' infringement claims, arguing that the accused instrumentalities do not infringe either the '117 patent or the '670 patent literally or under the doctrine of equivalents ("DOE").  Docket No. 280 at 6-7.  AMD incorporates the Firefly defendants' arguments that prosecution history estoppel precludes a DOE argument for the Group 2 burners and claim vitiation precludes a DOE argument for both groups of burners.  *See id*. at 7 (citing Docket No. 274 at 12-16).

---

[3] A detailed description of the '117 and '670 patents is included in the Court's order on the Firefly defendant's motion for summary judgment.  *See* Docket No. 348.

Regarding the Group 2 burners, the Court held in its order on the Firefly defendants' motion for summary judgment that the Group 2 burners do not literally infringe the '117 patent or the '670 patent, and that prosecution history estoppel bars Warming Trends from asserting a doctrine of the equivalents theory for the Group 2 burners.  Docket No. 348 at 10-11, 13-15.  Warming Trends does not cite any different facts or provide any other arguments that would dispute these holdings as applied to AMD.  *See generally* Docket No. 295 at 11-13.  Accordingly, the Court grants summary judgment in favor of AMD that the Group 2 burners do not literally infringe the '117 patent or the '670 patent, and that prosecution history estoppel bars Warming Trends from asserting a DOE theory for the Group 2 burners.

Regarding the Group 1 burners, AMD argues that it never sold any burners that used blank end nipples.  Docket No. 280 at 4, ¶¶ 12-14.  The Court previously held that it was undisputed that the Group 1 burners do not literally infringe the '117 patent. Docket No. 348 at 10.  Warming Trends argues that the Group 1 burners infringe the '117 patent under the doctrine of equivalents and that evidence establishes that AMD offered for sale and sold Group 1 burners.  Docket No. 295 at 11-12.  It is undisputed that, in 2020, AMD received an initial shipment of burners with blank end nipples from the Firefly defendants.  Docket No. 280 at 4, ¶ 12.  Warming Trends cites Ray Stone's deposition testimony as evidence that AMD provided at least one of the Group 1 burners to a client.  Docket No. 295 at 4-5, ¶ 7 (citing Docket No. 295-10 at 5, 258:12-260:12 (stating that one of the blank end nipple burners that AMD "had sent out to one of their potential clients had failed.")).  AMD argues that Warming Trends cannot establish that the Group 1 burners infringe the '117 patent under the doctrine of

equivalents and AMD incorporates the Firefly defendants' arguments on claim vitiation. Docket No. 280 at 7; Docket No. 319 at 4.  In the order on the Firefly defendants' motion, the Court held that claim vitiation does not preclude Warming Trends from asserting that the Group 1 burners infringe the '117 patent under the doctrine of equivalents.  Docket No. 348 at 18.  The Court ruled that a "reasonable jury could find the press fit connection and the threaded connection to be equivalent." *Id*.  AMD does not cite any different facts or provide any other arguments that would dispute these holdings as applied to AMD.  *See generally* Docket Nos. 280, 319.  Accordingly, the Court denies this portion of AMD's motion.

The only remaining issue is whether the Group 1 burners infringe the '670 patent. AMD argues that there is no evidence that it sold or offered to sell any Group 1 burners after the '670 patent was issued on December 7, 2021.  Docket No. 319 at 5.[4]  "Mere possession of a product which becomes covered by a subsequently issued patent does not constitute an infringement of that patent until the product is used, sold, or offered for sale in the United States during the term of the patent."  *Welker Bearing Co. v. PHD, Inc.*, 550 F.3d 1090, 1095 (Fed. Cir. 2008).  Warming Trends argues that AMD offered the Group 1 burners for sale on its website and on retailer websites.  Docket No. 295 at 12; 4-5, ¶ 7 (citing Docket No. 295-2 at 11, 118:19-119:24; Docket No. 295-14; Docket No. 294-15).  However, none of Warming Trends' cited evidence establishes that AMD offered for sale any Group 1 burners after issuance of the '670 patent on December 7, 2021.  Jeffrey Straubel, the CEO of AMD, testified at his deposition that the screenshot

---

[4] Both AMD and the Firefly defendants appear to concede that the Group 1 burners contain all the limitations of the '670 patent.  *See* Docket No. 319 at 5; Docket No. 274 at 11-12.

of AMD's website, Docket No. 295-14, depicts pictures of burners with blank end

nipples.  Docket No. 295-2 at 11, 118:19-119:24.  However, the pictures on AMD's

website do not constitute an "offer for sale."  The Federal Circuit has held that

> [a]n "offer for sale" sufficient to give rise to liability for patent infringement must
> meet the traditional contract law definition of that term.  Thus, the defendant must
> communicate a manifestation of willingness to enter into a bargain, so made as
> to justify another person in understanding that his assent to that bargain is invited
> and will conclude it.  Communications that describe the allegedly infringing
> materials but do not contain any price terms ... on their face ... cannot be
> construed as an "offer" which the offeree could make into a binding contract by
> simple acceptance.

*Superior Indus., LLC v. Thor Glob. Enterprises Ltd*., 700 F.3d 1287, 1294 (Fed. Cir.

2012) (internal citations and alterations omitted).  The screenshot of AMD's website

does not contain any price terms for the burners, *see* Docket No. 295-14 at 2-5, and

therefore these website communications cannot constitute an "offer for sale" as a matter

of law.  *See Superior Indus.,* 700 F.3d at 1294; *Infonow Corp. v. Zyme Sols., Inc*., No.

12-cv-03255-MSK-MEH, 2013 WL 4052183, at *7 (D. Colo. Aug. 6, 2013) (holding that

printed materials did not constitute an "offer for sale" because the materials "never

stat[ed] any price terms or other details that would be essential to constitute an offer

that a prospective buyer could accept.").  Furthermore, whether a third-party retailer

offered Group 1 burners for sale on its website has no bearing on whether AMD

infringed the '670 patent.  *See* Docket No. 295-15 (depicting the website of a company

named "All Things Barbeque").  Warming Trends has provided no evidence that AMD

made, used, sold, or offered to sell any Group 1 burners after issuance of the '670

patent.  Accordingly, AMD is entitled to summary judgment that it did not infringe the

'670 patent literally or under the doctrine of equivalents with the Group 1 burners

because infringement requires conduct during the term of the patent. *See Welker Bearing*, 550 F.3d at 1095.

In sum, the Court grants summary judgment in favor of AMD that the Group 2 burners do not literally infringe the '117 patent or the '670 patent, and that prosecution history estoppel bars Warming Trends from asserting a DOE theory for the Group 2 burners. The Court also grants summary judgment in favor of AMD that the Group 1 burners do not literally infringe the '117 patent and do not infringe the '670 patent literally or under the doctrine of equivalents. Warming Trends is allowed to proceed against AMD on the theory that the Group 1 burners infringe the '117 patent under the doctrine of equivalents.

## B. Trade Secrets

AMD moves for summary judgment on Warming Trends' claims for misappropriation of trade secrets under the Defend Trade Secrets Act ("DTSA") and Colorado law. Docket No. 280 at 8. To establish a claim under either federal or state law, the plaintiff must prove: 1) the existence of a trade secret; 2) the acquisition, use, or disclosure of the trade secret without consent; and 3) the person acquiring, using, or disclosing the trade secret knew or had reason to know that the trade secret was acquired by improper means. *See Zvelo, Inc. v. Akamai Techs., Inc.*, No. 19-cv-00097-PAB-SKC, 2019 WL 4751809, at *2 (D. Colo. Sept. 30, 2019).[5] Due to the similarities in the elements, the Court will address the federal and state claims together.

---

[5] Under the DTSA, the trade secret must also "relate[] to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1).

AMD argues that Warming Trends has no evidence that AMD acquired or learned of Warming Trends' trade secrets. Docket No. 280 at 8. Warming Trends argues that evidence in the record demonstrates that AMD misappropriated Warming Trends' trade secrets by inducing Mr. Stone to breach his duty to maintain these trade secrets in confidence. Docket No. 295 at 13-14. Warming Trends cites the expert report of Dr. Harri Kytomaa, Docket No. 295-16, to describe the alleged trade secrets and support its argument that Mr. Stone had a duty to maintain in confidence these trade secrets. Docket No. 295 at 14-15. The Court's Practice Standards state that if the party opposing the summary judgment motion

> believes that there exist additional disputed questions of fact. . ., the party shall, in a separate section of the party's brief styled "Statement of Additional Disputed Facts," set forth in simple, declarative sentences, separately numbered and paragraphed, each additional, material disputed fact which undercuts movant's claim that it is entitled to judgment as a matter of law. Each separately numbered and paragraphed fact shall be accompanied by a specific reference to material in the record which establishes the fact or at least demonstrates that it is disputed.

Practice Standards (Civil Cases), Chief Judge Philip A. Brimmer, § III.F.3.b.v. (emphasis omitted). Warming Trends did not include a "Statement of Additional Disputed Facts" section in its brief. *See generally* Docket No. 295.

Warming Trends cites evidence from its response to AMD's statement of facts, not for the purpose of disputing one of AMD's statements and thereby showing a genuine dispute of material fact, but rather to establish facts. Had those facts been included in Warming Trends' own statement of facts, AMD would have been obligated to admit or deny those facts. AMD, however, had no obligation to admit or deny deposition excerpts or documents. The purpose of the Court's detailed Practice Standards for summary judgment motions is to establish what facts are disputed and

what facts are undisputed.  Warming Trends has significantly compromised this process

by not including a statement of facts in its response.  Moreover, the requirement in the

Practice Standards that a party opposing summary judgment state its facts in the form

of statements is consistent with Fed. R. Civ. P. 56(e), which refers to "assertions of

fact."  Rule 56 distinguishes such assertions or statements of fact from the evidence

that supports the assertions.  *See, e.g.*, Fed. R. Civ. P. 56(c)(1) ("A party asserting that

a fact cannot be or is genuinely disputed must support that assertion by: (A) citing to

particular parts of materials in the record.").  Thus, for Warming Trends to simply cite to

an expert report in its response frustrates the summary judgment process and violates

the Court's Practice Standards.  As a result, the Court will not consider such evidence to

establish an undisputed fact.

Even if the Court considered facts from Dr. Kytomaa's report as undisputed facts,

Warming Trends has failed to put forth any evidence establishing an inference that AMD

acquired the alleged trade secrets from Mr. Stone.  *See generally* Docket No. 295.

AMD has met its burden at the summary judgment stage by arguing that Warming

Trends lacks evidence that AMD acquired any trade secrets.  *See* Docket No. 280 at 8;

*see also Bausman*, 252 F.3d at 1115.  Warming Trends, however, has not put forth any

evidence to establish that AMD misappropriated the trade secrets, *see generally* Docket

No. 295, and therefore Warming Trends has failed to "establish, at a minimum, an

inference of the presence of each element essential to the case." *Bausman*, 252 F.3d

at 1115.  Accordingly, the Court grants AMD's motion for summary judgment on the

federal and state law claims for misappropriation of trade secrets.  *See* Fed. R. Civ. P.

56(e)(3) (stating that if a party fails to properly support an assertion of fact, the Court

may grant summary judgment if the motion shows that the movant is entitled to summary judgment).[6]

### C. <u>Intentional Inducement of Breach of Contract</u>

To be liable for intentional interference with a contract, a defendant must (1) be aware of a contract between two parties, (2) intend that one of the parties breach the contract, and (3) intentionally and improperly induce the party to breach or make it impossible for the party to perform the contract. *Krystkowiak v. W.O. Brisben Co. Inc.*, 90 P.3d 859, 871 (Colo. 2004); *Warne v. Hall*, 373 P.3d 588, 595-96 (Colo. 2016).

AMD argues that Warming Trends has no evidence that AMD was aware of a contract between Mr. Stone and Warming Trends or that AMD induced Mr. Stone to breach the contract.  Docket No. 280 at 13-14.  Warming Trends asserts that AMD knew of a contract between Warming Trends and Mr. Stone because AMD was aware, by at least November 2019, of a lawsuit between Warming Trends and Mr. Stone that involved a noncompete agreement.  Docket No. 295 at 2-3, 9, ¶ 3 (citing Docket No. 295-3; Docket No. 295-4 at 5-6, 73:21-74:13).  Furthermore, Warming Trends argues that evidence establishes that AMD induced Mr. Stone to breach the noncompete agreement by encouraging Mr. Stone to develop brass burners and providing design assistance to Mr. Stone.  *Id*. at 3, 9, ¶ 4 (citing Docket No. 295-5).  In reply, AMD asserts that the record lacks any evidence that AMD intentionally induced Mr. Stone to breach the agreement because there is no evidence that "AMD knew the terms of

---

[6] AMD alternatively argues that Warming Trends is barred from identifying the alleged trade secret information for the first time in its expert report.  Docket No. 280 at 10-13.  Because the Court granted summary judgment in favor of AMD on the trade secret claims, the Court does not reach this argument.

Stone's agreement with Warming Trends or that AMD's discussions with Stone about a new business relationship would breach such an agreement."  Docket No. 319 at 6.

Viewing the evidence in the light most favorable to Warming Trends, the Court finds that Warming Trends has established a genuine issue of material fact regarding whether AMD was aware of the existence of noncompete agreement between Warming Trends and Mr. Stone by at least November 2019.  *See* Docket No. 295-3 at 3-4. However, Warming Trends has presented no evidence that AMD intentionally and improperly induced Mr. Stone to breach the noncompete agreement.  *See Warne*, 373 P.3d at 595-96.  Warming Trends cites no evidence that AMD knew the terms of the noncompete agreement or that the agreement involved brass burners.  *See generally* Docket No. 295.  Although Warming Trends presents some evidence that AMD provided advice to Mr. Stone on a brass burner business, *see id.* at 3, ¶ 4, this evidence does not establish that AMD acted with the intention to induce Mr. Stone to breach his noncompete agreement.  *See T2 Tech., Inc. v. Windstream Commc'n., Inc.,* No. 14-cv-03151-MSK-KLM, 2016 WL 9735763, at *7 (D. Colo. Sept. 26, 2016) (granting summary judgment where plaintiff failed to provide any non-speculative evidence that defendant acted with the intention to induce a breach of a contract).  Accordingly, the Court grants the portion of the motion requesting summary judgment on the intentional inducement claim.

### D.  Lanham Act

The Lanham Act prohibits a person from using, in commercial advertising or promotion, any "false or misleading description of fact" that "misrepresents the nature, characteristics, qualities, or geographic origin" of his or another person's services or

commercial activities.  15 U.S.C. § 1125(a)(1)(B); *Wilson v. AdvisorLaw LLC*, No. 17-cv-1525-MSK, 2018 WL 4932088, at * 3 (D. Colo. Oct. 11, 2018).  A false advertising claim under the Lanham Act requires proof that: (1) defendant "made a false or misleading description of fact or representation of fact in a commercial advertisement about its own or another's product;" (2) defendant's "misrepresentation was material, in that it was likely to influence the purchasing decision;" (3) defendant's "misrepresentation actually deceived or had the tendency to deceive a substantial segment of its audience;" (4) defendant "placed the false or misleading statement in interstate commerce;" and (5) plaintiff "has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products." *Bimbo Bakeries USA, Inc. v. Sycamore*, 29 F.4th 630, 643-44 (10th Cir. 2022) (internal quotations, alterations, and citations omitted).

AMD challenges the first element of the Lanham Act claim.  Docket No. 280 at 15-16.  In order to establish the first element, "a plaintiff may show that the statement was literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse consumers."  *Sycamore*, 29 F.4th at 644 (citation omitted).  AMD argues that Warming Trends has no admissible evidence that AMD ever made a false statement in its advertising.  Docket No. 280 at 16.  It is undisputed that there is no evidence that AMD promoted or advertised its brass burners as being "licensed" by Warming Trends.  *Id*. at 5, ¶ 16.  Accordingly, AMD argues it is entitled to summary judgment on the Lanham Act claim.  *Id*. at 15-16.

Warming Trends responds that, "[c]ontrary to AMD's arguments, Warming Trends' claim is that AMD 'advertises products identical in appearance to Warming

14

Trends' products as its own.'" Docket No. 295 at 17. Warming Trends' argument is not clear, but it appears to assert that the false statements consist of advertisements on AMD's website depicting AMD's products that include blank end nipples. *See id.* AMD maintains it has never sold brass burners with blank end nipples, but Warming Trends argues that evidence establishes that AMD offered blank end nipple burners for sale on its website. *Id.* at 4-5, 8, ¶¶ 7, 17 (citing Docket No. 195-2 at 11, 118:19-119:24; Docket No. 295-14). However, Warming Trends does not identify any statement of fact from the website advertisement that is "false" or "misleading." *See generally id.*; *see also* Docket No. 295-14. "Courts have long concluded that only statements of fact are actionable under the Lanham Act." *Sycamore*, 29 F.4th at 644 (collecting cases). Accordingly, because Warming Trends has failed to identify a false or misleading statement of fact, summary judgment is warranted on the Lanham Act claim.

### E. Colorado Consumer Protection Act

To prevail on a claim under the Colorado Consumer Protection Act, a plaintiff must prove the following elements: "(1) that the defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of defendant's business, vocation, or occupation; (3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered injury in fact to a legally protected interest; and (5) that the challenged practice caused the plaintiff's injury." *Two Moms & a Toy, LLC v. Int'l Playthings, LLC*, 898 F. Supp. 2d 1213, 1219 (D. Colo. 2012) (quoting *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 146-47 (Colo. 2003)); *see also Renfro v. Champion Petfoods USA, Inc.*, 25 F.4th 1293, 1301 (10th Cir. 2022). In

analyzing the third element, a significant public impact, Colorado courts consider three factors: (1) "the number of consumers directly affected by the challenged practice," (2) the "relative sophistication and bargaining power of the [affected] consumers," and (3) "evidence that the challenged practice has previously impacted other consumers or has the significant potential to do so in the future."  *Rocky Mountain Rhino Lining*, 62 P.3d at 149.  When a challenged trade practice affects "only a small fraction" of the entity's consumers, the impact on the public is not "significant" under the CCPA.  *Peterson v. USAA Life Ins. Co.*, 353 F. Supp. 3d 1099, 1113 (D. Colo. 2018) (citing *Rocky Mountain Rhino Lining*, 62 P.3d at 150).

AMD challenges the first and third elements of the CCPA claim.  Docket No. 280 at 15-17.  AMD asserts there is no admissible evidence that AMD ever made a false statement in its advertising.  *Id*. at 16.  Even if the advertisements were a deceptive trade practice, AMD argues there is no evidence that the advertising has significantly impacted the public.  *Id*. at 17.  Warming Trends does not address the first element of the CCPA claim, the alleged unfair or deceptive trade practice, and instead provides citations related to the Lanham Act claim.  *See* Docket No. 295 at 17.  Summary judgment is warranted on this ground alone.

Even if Warming Trends had addressed the first element, the Court would still grant summary judgment on this claim because Warming Trends has failed to provide any evidence that the challenged practice significantly impacts the public.  Warming Trends argues that, "in most circumstances, where a defendant's misrepresentations are in the form of an advertisement directed generally to the public as potential or actual consumers, a significant public impact is presumed."  *Id*. (citing *Francis v. Mead*

*Johnson & Co.*, No-10-cv-00701-JLK, 2010 WL 5313540, at *20 (D. Colo. Dec. 17, 2010); *Matthys v. Narconon Fresh Start*, 104 F. Supp. 3d 1191, 1206-07 (D. Colo. 2015)).  However, *Francis* and *Matthys* addressed the public impact element at the motion to dismiss stage, not the summary judgment stage.  *See Francis*, 2010 WL 5313540, at *6; *Matthys,* 104 F. Supp. 3d at 1207.  Courts in this district have held that, at the summary judgment stage, a plaintiff cannot rely solely on the existence of misleading statements online to establish the public impact element.  *See Benton v. Avedon Engineering, Inc.*, No. 10-cv-01899-RBJ-KLM, 2012 WL 5866303, at *6 (D. Colo. 2012) (holding that "[t]he mere fact that displays. . . on websites can be, and presumably are, viewed by numerous people is not enough."); *Examination Bd. of Professional Home Inspectors v. Int'l Assn. of Certified Home Inspectors*, 519 F. Supp. 3d 893, 920 (D. Colo. 2021) (holding that "the fact that numerous people heard or saw these statements [on the website] is insufficient" to establish public impact); *RV Horizons, Inc. v. Smith*, No. 18-cv-02780-NYW, 2020 WL 6701119, at *29-30 (D. Colo. Nov. 13, 2020) (holding that "the mere availability of the challenged statements on the website is not enough to establish public impact" and plaintiff failed to adduce any evidence of the number of affected consumers or their relative sophistication or bargaining power).  Warming Trends has presented no evidence of the number of consumers directly affected by the alleged statements on AMD's website.  *See generally* Docket No. 295; *Rocky Mountain Rhino Lining*, 62 P.3d at 149.  Warming Trends also fails to offer any evidence regarding the sophistication and bargaining power of the affected consumers or evidence that the challenged practice has previously impacted other consumers or has the significant potential to do so in the

future.  *See generally* Docket No. 295; *Rocky Mountain Rhino Lining*, 62 P.3d at 149;

*Alpine Bank v. Hubbell*, 555 F.3d 1097, 1113 (10th Cir. 2009) (affirming grant of

summary judgment where the record contained no evidence that the representation

harmed other customers in the past or is likely to do so in the future); *Johnstown Feed &*

*Seed, Inc. v. Continental Western Ins. Co.*, 641 F. Supp. 2d 1167, 1181 (D. Colo. 2009)

(granting summary judgment where plaintiff failed to provide any evidence of the

number of customers affected by the deceptive practice or the relative sophistication of

the customers).  Warming Trends has failed to offer sufficient evidence to create a

genuine issue of material fact on the public impact element.  Accordingly, AMD is

entitled to summary judgment on the CCPA claim.

### F.  Unfair Competition

Under Colorado law, the tort of unfair competition requires proof that (1) "the

defendant has copied the plaintiff's products or services or misappropriated plaintiff's

name or operations in some regard" and (2) "this conduct is likely to deceive or confuse

the public because of the difficulties in distinguishing between the plaintiff's and

defendant's products and services."  *Wells Fargo Insurance Servs. USA, Inc. v.*

*McQuate*, 276 F. Supp. 3d 1089, 1117 (D. Colo. 2016).

AMD argues that Warming Trends lacks any evidence to support an unfair

competition claim under Colorado law.  Docket No. 280 at 18-19.[7]  Warming Trends

responds that evidence shows AMD copied Warming Trends' products and created

---

[7] To the extent that Warming Trends asserts an unfair competition claim under the Lanham Act, AMD argues that this claim fails.  Docket No. 280 at 19.  In response, Warming Trends states that its unfair competition claim arises under Colorado law.  *See* Docket No. 295 at 18.  Accordingly, the Court declines to address any arguments regarding an unfair competition claim under the Lanham Act.

customer confusion.  Docket No. 295 at 8-9, 18, ¶¶ 17-18.  Warming Trends cites the deposition testimony of Tim Flaherty and Voni Flaherty to argue that consumers and others have confused AMD's brass burners with Warming Trends' brass burners.  *Id*. at 8-9, ¶ 18 (citing Docket No. 295-20 at 5, 225:20-229:18; Docket No. 295-21 at 5-7, 97:22-102:2).  In reply, AMD argues that Warming Trends cannot rely on "hearsay reports from unnamed 'people' at a trade show [who] allegedly told Mr. and Mrs. Flaherty that a burner Stone demonstrated 'looked like' a Warming Trends burner."  Docket No. 319 at 9.

The Tenth Circuit explains that, "[t]o determine whether genuine issues of material fact make a jury trial necessary, a court necessarily may consider only the evidence that would be available to the jury."  *Argo v. Blue Cross & Blue Shield of Kan., Inc*., 452 F.3d 1193, 1199 (10th Cir. 2006); *see also Gross v. Burggraf Constr. Co*., 53 F.3d 1531, 1541 (10th Cir. 1995) ("It is well settled in this circuit that we can consider only admissible evidence in reviewing. . . summary judgment.").  "Hearsay testimony cannot be considered because a third party's description of a witness' supposed testimony is not suitable grist for the summary judgment mill."  *Gross*, 53 F.3d at 1541 (alterations, internal quotations, and citation omitted); *see also Johnson v. Weld Cnty*., 594 F.3d 1202, 1210 (10th Cir. 2010) (declining to consider hearsay statements that proponent failed to show could be presented in an admissible form).  The Court finds that Warming Trends' evidence fails to create a triable question of fact because the cited deposition testimony is inadmissible hearsay.  Mr. Flaherty testified at his deposition, "I've been told that people were confused between Ray's burners and our burners."  Docket No. 295-20 at 5, 226:2-3.  Mr. Flaherty stated that multiple attendees

at a tradeshow told him Mr. Stone "is showing your burners," but Mr. Flaherty could not identify the names of these individuals.  *Id*., 226:10-227:17.  Mr. Flaherty also said that some distribution partners "raise[d] the concern that there was confusion between Ray's burner and our burner."  *Id*., 228:7-14.  These statements are inadmissible hearsay. *See* Fed. R. Evid. 801(c).  Ms. Flaherty testified at her deposition that "we have repeatedly been told there is confusion" with the burners, but she did not have any records of the conversations and could not name the individuals.  Docket No. 295-21 at 5-6, 97:22-99:13.  Ms. Flaherty stated that people have told her "Why are they selling a knockoff burner? Why are you guys allowing him to sell a knockoff burner? It's the same burner."  *Id*. at 6, 100:3-6.  These statements are also hearsay.  *See* Fed. R. Evid. 801(c).  Warming Trends fails to show that this hearsay could be presented in an admissible form at trial.  *See generally* Docket No. 295.  Accordingly, the Court will not consider the cited testimony of Mr. Flaherty or Ms. Flaherty to dispute AMD's assertion that Warming Trends lacks evidence to support this claim.  Warming Trends cites no other evidence that raises an inference that AMD's conduct is likely to deceive or confuse the public.  *See generally id*.  As a result, the Court grants summary judgment to AMD on this claim.

**IV.      CONCLUSION**

It is therefore

ORDERED that Defendant AMD Direct, Inc.'s Motion for Summary Judgment

[Docket No. 280] is **GRANTED in part** and **DENIED in part.**

DATED March 30, 2023.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge